UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DANIEL LITTLEPAGE, on his own behalf and on behalf of a class of those similarly situated, )<br>)<br>)<br>Plaintiffs,                        )<br>)<br>v.                                  )<br>)<br>COMMISSIONER, INDIANA DEPARTMENT )<br>OF CORRECTION;                     )<br>SUPERINTENDENT, MIAMI CORRECTIONAL )<br>FACILITY,                            )<br>)<br>Defendants.             ) | No. 1:13-cv-2008<br><br><br><br>COMPLAINT-CLASS ACTION |

**Class Action Complaint for Injunctive and Declaratory Relief**

**Introduction**

1.      Plaintiff, a prisoner confined within the Miami Correctional Facility (MCF), a facility within the Indiana Department of Correction (DOC), is an American Indian who is being denied his right to worship because of defendants' policy of not allowing group worship and study in the absence of a qualified volunteer and in the absence of prisoner facilitators maintaining regular communication with a recognized religious authority.  This policy has recently been implemented despite the fact that the Native Americans at MCF have been meeting for religious study and worship for years, without incident, with prisoners leading the worship and services without the presence of any outside volunteer and without regular communication with a recognized religious authority. The actions and inactions of the defendants substantially burden the religious beliefs and practices of plaintiff and those similarly situated and violate their rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a). Injunctive and corresponding declaratory relief is requested.

**Jurisdiction, venue, cause of action**

2. This Court has jurisdiction of this matter pursuant to 28 U.S.C § 1331.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

5. This action is brought pursuant to 42 U.S.C. § 2000cc-2(a).

**Parties**

6. Daniel Littlepage is an adult prisoner currently confined to the Miami Correctional Facility, located in Bunker Hill, Indiana.

7. The Commissioner of the Indiana Department of Correction is the duly appointed person in charge of the Indiana Department of Correction and is named pursuant to Fed. R. Civ. P. 17(d). His office is located in Indianapolis, Indiana.

8. The Superintendent of the Miami Correctional Facility is the duly appointed person in charge of the facility and is also named pursuant to Fed. R. Civ. P. 17(d).

**Class action allegations**

9. Daniel Littlepage brings this action on his own behalf and on behalf of a class of those similarly situated, pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

10. The class is defined as:

> all prisoners at Miami Correctional Facility, present and future, who adhere to Native American religion and who, but for the prohibition challenged in this action, would participate in congregate Native American worship and/or study at the facility.

11. As defined the class meets all the requirements of Rule 23(a) of the Federal Rules of Civil Procedure. Specifically:

> a. The class is so numerous that joined of all members is impracticable. Prior to the time that defendants terminated all congregate Native American worship and study there

were approximately 40 prisoners in the facility who attended Native American worship and study.

b. There are common questions of law or fact common to the class – whether the termination of all Native American congregate study and worship violates the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a).

c. The claim of the representative party is typical of those of the class.

d. The representative party will fairly and adequately protect the interests of the class.

12. Plaintiff's counsel is appropriate to be appointed class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure and should be so appointed.

13. The further requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure are met in this case in that at all times defendants have acted, and have refused to act, in a manner generally applicable to the class as a whole, thereby making appropriate injunctive and declaratory relief with respect to the class as a whole.

**Legal Background**

14. The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides that:

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling interest.

*See* 42 U.S.C. § 2000cc-1(a).

15. The term "institution" is defined as any facility or institution that "is owned, operated, or managed by, or provides services on behalf of any State or political subdivision of a State" and includes, *inter alia*, a "jail, prison, or other correctional facility." *See* 42 U.S.C. § 1997(1).

16.     The term "religious exercise" is defined to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *See* 42 U.S.C. § 2000cc-5(7)(A).

17.     RLUIPA applies in any case in which "the substantial burden [on the religious exercise of a person] is imposed in a program or activity that receives Federal financial assistance." *See* 42 U.S.C. § 2000cc-1(b)(1).

**Factual allegations**

18.     The Indiana Department of Correction ("DOC") receives federal financial assistance.

19.     Daniel Littlepage is Native American and follows the traditional religious practices of Native Americans.

20.     This involves, among other things, meeting together for the Sacred Circle; smudging, which is the use of smoke from herbs to heal and purify; the Sacred Pipe ceremony; and the Sweat Lodge.

21.     The DOC's Handbook of Religious Beliefs and Practices recognizes that Native American corporate worship may occur within the DOC and that the following religious practices, among others, are allowed: the Sacred Circle, smudging, the Sacred Pipe ceremony, and the Sweat Lodge if it is specifically authorized and if an approved spiritual leader is available.

22.     Generally, recognized religions in the DOC are provided with a corporate service each week and one weekly study session.

23.     The DOC's policy on the Development and Delivery of Religious Services, Manual of Policies and Procedures No. 01-03-101 provides that prisoners may facilitate worship and study in the absence of a volunteer or approved staff if the prisoner :

- Is free of Class A conduct reports for one year and Class B reports for six months

- Maintains regular communication with a recognized religious authority

- Is not a member of a security threat group

- Does not delegate responsibilities to another prisoner

- Complies with other requirements as deemed necessary by the head of the facility

(*Id.* at Section XVII(A)(C).

24. The above policy has been in effect since at least September 1, 2009.

25. Daniel Littlepage has been incarcerated at the Miami Correctional Facility ("MCF") for approximately two years.

26. During the time he has been at MCF, until June 15, 2013, Native American prisoners were allowed corporate worship once a week and corporate study once a week.

27. The study and worship was led by prisoners. At no point was there an outside volunteer and the prisoners who led the worship and study did not have any regular communication with a recognized religious authority.

28. On information and belief, prior to the time that Daniel Littlepage came to MCF prisoners were allowed to lead Native American worship and study for years despite the fact that there was not an outside volunteer present and despite the fact that the prisoners did not have any regular communication with a recognized religious authority. However, worship and study sessions were fully supervised by staff.

29. During the worship Daniel Littlepage and the other participating prisoners were allowed to smudge, although prisoners at MCF were not allowed a Sweat Lodge or Sacred Pipe Ceremony.

30. Other religions at MCF are also allowed to meet two times a week for study and worship.

31. There are a number of chaplains employed by the DOC who work at MCF. They are all Christian and may, on occasion, lead Christian services and study sessions for the prisoners. They are not trained to lead Native American services or study and do not do so.

32. At no point did any of the Native American congregate services or congregate study sessions create any sort of disturbance or other interference with the good order and smooth running of the institution.

33. In June of 2013, despite the fact that Native American religious services and meetings had occurred for years without participation of an outside volunteer and without regular communication with a recognized religious authority, a determination was made by defendants and other DOC employees that all Native American religious meetings and services at MCF would be discontinued because there was no qualified volunteer and/or prisoner who maintained regular communication with a recognized religious authority.

34. At the current time there are no qualified volunteers to lead the Native American worship or study. Nor are there prisoners who maintain regular communication with a recognized religious authority. Maintaining regular communication with a recognized religious authority is difficult as there is no formal accrediting process for Native American spiritual leaders and there is not a recognized religious hierarchy that prisoners can contact. It is unclear who the DOC recognizes as religious authority.

35. Additionally, the person who Mr. Littlepage recognizes as his spiritual leader lives in South Dakota and is in his 90's. He is unable to travel to MCF.

36. The finding of a qualified volunteer is made more difficult, if not impossible, by the DOC's requirement, stated in its Handbook of Religious Beliefs and Practices that: "anyone desiring to serve as a Native American spiritual advisor in the Department of Correction must be

recommended by the DOC Spirituality Commission of the Indiana Native American Indian Affairs Commission." It appears from its website that the Commission has not had a meeting reporting any minutes since 2007. http://www.in.gov/inaiac/2310.htm (last visited Dec. 17, 2013). Additionally, news reports indicate that the Commission essentially disbanded in 2008 when five of its members resigned. Lori Lovely, NUVO, *Discrepancies haunt Indian plate fund* (Aug. 8, 2012), available at http://www.nuvo.net/indianapolis/discrepancies-haunt-indian-plate-fund/Content?oid=2479122&mode=print#.UrC2CdJDvIc.

37. Although at times Department of Correction employees have noted that there is a need to have a qualified outside volunteer or a prisoner who maintains regular communication with a recognized religious authority, Department of Correction employees have also noted that there can be no corporate Native American services or study unless and until a volunteer is present. (*See* Attachment 1).

38. The MCF is divided into a Phase I facility and a Phase II facility and prisoners are housed in either the Phase I or Phase II portion of the facility.

39. There are Native American prisoners on both the Phase I and Phase II sides of MCF.

40. Native American services and study have been terminated on both the Phase I and Phase II sides for identical reasons.

41. Daniel Littlepage is located on the Phase I side of the institution.

42. In order to participate in religious services and study within the Indiana Department of Correction a prisoner must be listed on what is called a "count letter."

43. At the time Native American congregate worship and study was discontinued there were approximately 20 prisoners on the count letter for Native American services and study on the Phase I side.

44.     On information and belief there were approximately 20 prisoners on the Phase II side who were on the count letter for Native American services and study at the time the congregate worship and stud was discontinued.

45.     Therefore, since June of 2013, no congregate Native American religious services or study meetings have been allowed at MCF.

46.     Both the congregate worship services and study meetings are important and essential for Mr. Littlepage to be able to celebrate and practice his religion.

47.     Mr. Littlepage has fully and timely exhausted all available grievance remedies to no avail. (See Attachment 2).

48.     The failure to allow weekly corporate services and separate weekly study groups for Native Americans and the denial of the ability of Native Americans to engage in basic religious practices at MCF impose a substantial burden on the exercise of Mr. Littlepage's and the members of the putative class' religion.  They are being denied the ability to study and worship with co-religionists.

49.     The DOC cannot demonstrate that the substantial burden imposed on Mr. Littlepage's religious exercise is justifiable under RLUIPA.  Specifically, there is no justification for the requirement that services and study be led by an outside volunteer and by a prisoner in regular communication with a recognized religious authority, particularly given the long period of time during which prisoners who have not been in regular communication with a recognized religious authority have led both services and study meetings.

50.     At all times defendants have acted, and have failed to act, under color of state law.

51.     Plaintiff, and the class he seeks to represent, are being caused irreparable harm by the actions and inactions of defendants for which there is no adequate remedy at law.

**Legal claims**

52. The denial of corporate worship and weekly study groups to plaintiff and other Native American prisoners at Miami Correctional Facility because there is no approved outside volunteer and/or prisoner facilitator who is in regular communication with a recognized religious authority violates the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a).

**Request for relief**

WHEREFORE, plaintiff requests that this Court:

1. Accept jurisdiction of this case and set it for hearing at the earliest opportunity.

2. Certify this case as a class action with the class as defined above.

3. Declare that the actions and inactions of the defendants have violated federal law as specified above.

4. Enter a preliminary injunction, later to be made permanent, ordering that defendants immediately allow weekly corporate services and weekly study sessions for Native American prisoners at Miami Correctional Facility led by prisoners as before, if there are no outside volunteers available.

5. Award plaintiff his costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

6. Award all other proper relief.

/s/ Kenneth J. Falk
Kenneth J. Falk
No. 6777-49
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059 ext. 104
fax: 317/635-4105
kfalk@aclu-in.org

Attorney for Plaintiff and the Putative Class